## No. 11,975.

### HENRY P. HAKE VS. WILLIAM HAKE AND WILLIAM COACH.

Suit having been instituted against the two individuals who compose a commer-
cial partnership in process of liquidation, the prayer being for a judgment
against them *in solido,* and the evidence disclosing that the plaintiff had ren-
dered services only for the exclusive benefit of one of the members who was
unable to give the business his time and attention, the other should be ex-
onerated from liability therefor.

In such case the expenditures made by the firm, or from the assets thereof, in
partial or complete settlement of said claim, may go into the partnership set-
tlement when made *inter se.*

APPEAL from the Fourth Judicial District Court for the Parish of
Grant. *Wear, J.*

*R. J. Bowman* and *D. E. Corbitt* for Plaintiff, Appellee.

*John C. Ryan* for Defendant, Appellant.

Argued and submitted December 20, 1895.

Opinion handed down February 10, 1896.

The opinion of the court was delivered by

WATKINS, J.   Plaintiff claims of defendants *in solido* $3381.17
with interest from December 9, 1892, on an open account for this,
to-wit:

That in 1886, the defendants formed a partnership "for the pur-
pose of buying and selling lumber," and that they "continued said
business until 1892, when William Hake filed a bill in chancery in
the Circuit Court in the county of Kent, State of Michigan, for a set-
tlement and dissolution of said partnership;" which suit is still pend-
ing—all of the parties being citizens of the State of Michigan.

"That about 1886 the said partnership employed petitioner at the
price of seventy-five dollars per month, and petitioner remained in
the employment of said partnership until December 9, 1892.

"That said partnership was a commercial one, and that its engage-
ments bound the members thereof *in solido;* and that the items of

said account are entered on their books, and their said indebtedness has been repeatedly acknowledged by the defendants.

"That said partnership was dissolved by said suit for a settlement and dissolution," and on account of the "disagreement of the partners."

That the defendants "are residents of the State of Michigan and absent from the State of Louisiana," but possess a large amount of property within the jurisdiction of the court, for the attachment of which they prayed.

On plaintiff's prayer, a curator *ad hoc* was appointed to represent the absent defendants, contradictorily with whom, after his appointment, proceedings were inaugurated and property attached.

The account annexed to the petition is of the following tenor, viz.:

GRAND RAPIDS, Mich., October 1, 1894.

COACH & HAKE, DR.
To HENRY P. HAKE, for services.

1886.
May 25, Services commenced, to December 9, 1892, six years and six months, at $75 per month..................................................................................$5,850 00

CR.
By cash ......................................................................... $2,311 23
By goods from store...................................................... 157 00
                                                                              ————— $2,468 83

Balance due ................................................................... $3,381 17
Interest item omitted.

On the trial there was judgment in favor of the plaintiff against the defendants *in solido* for "the sum of three thousand three hundred and eighty-one dollars, being the amount sued for, less the credits admitted by the plaintiff in his petition, and costs, sustaining the attachment," etc.

From this judgment the defendant, William Coach, alone has appealed, William Hake not appearing in this court to complain of the judgment.

In the lower court, the defendant, William Coach, personally appeared, and through his attorney filed certain exceptions to the sufficiency and regularity of the proceedings, which were overruled; but they need no mention, inasmuch as they are not mentioned in his brief or oral argument.

For answer, the curator *ad hoc* appointed for William Hake plead a general denial.

Thereupon counsel for William Coach tendered the exception that plaintiff's suit is against the partnership of Coach and Hake, and that it was at date suit was filed, as well as at this time, "in course

·of liquidation and settlement'' in the suit pending in the Circuit Court of Kent county, Michigan, to which plaintiff makes reference in his petition, and where all the partners reside; '' and that plaintiff's redress and interest, if any he has, like other creditors of the partnership, is in the suit for the liquidation and settlement of the partnership affairs of which he is a creditor, and not in a separate suit against the partnership and partners, individually. That, if he has any action at all against the partners individually, it is only for the balance that might be due him, if any, after the partnership property and effects have been disposed of and the proceeds applied to the payment of the partnership debts.

'' That no action lies against the partners individually, during the pendency of a suit for a settlement and liquidation of the partnership.''

As supplementary thereto, counsel also filed an exception to the jurisdiction of the court *ratione personæ.*

The exceptions were taken up, and referred to the merits; and thereupon the defendant Coach filed an answer *in extenso.* The judgment, substantially, rejects the exceptions in giving the amount awarded against the defendants *in solido.*

In our opinion the debt claimed of the defendants is one of the partnership, and not of the individuals.

· This fact substantially appears from the face of the petition, account and judgment.

In the petition it is alleged that in 1886 the two defendants formed a partnership for the purpose of buying and selling lumber, and that it continued until 1892, when suit was filed in a Michigan court for its liquidation and settlement; which suit is still pending.

But in view of the fact that this exception was not distinctly passed upon by the judge *a quo,* and no stress has been laid on that question in argument of counsel on either side, we are of opinion that we should take up the case as we find it and deal with it accordingly.

An examination of the evidence of the witnesses discloses the following facts *pro et con:*

Henry P. Hake, plaintiff, as a witness, states that the services charged for were rendered as charged, and the amount credited was received at various dates during the period of his employment. That he was not employed as book-keeper, but as general manager

for the defendants' lumbering business; but there was no price agreed upon between himself and the defendants for his services.

He states emphatically:

"William Coach (the defendant) employed me, but there was no definite contract made.".

The defendant, William Hake, says, as a witness on behalf of the plaintiff, that he is "not acquainted with the facts" with regard to the services plaintiff had rendered the firm; and he testifies to no facts relative to his son's employment.

One of the plaintiff's witnesses, who testified under commission, said that managers of a lumbering business received higher wages than ordinary laborers—from fifty dollars to eighty-five dollars more per month. That ordinary laborers in that business receive from twelve dollars to thirty-six dollars per month.

He says the services of the plaintiff were worth from seventy-five dollars to one hundred dollars per month, and his board.

Another witness testifies to the same effect.

Another witness places his estimate of plaintiff's services per month at one hundred dollars to one hundred and twenty-five dollars.

Neither of those witnesses profess any personal knowledge of the parties or of plaintiff's services. Theirs is of the nature of expert testimony, and their statements were based upon hypothetical interrogatories exclusively.

Charles W. Hake, brother of the plaintiff, states that he has been for years past engaged as manager of the wholesale liquor establishment of the defendant, Wm. Hake, at Grand Rapids, Michigan, and, in that capacity, he has handled his father's interest in the partnership of Coach & Hake. Knows that his brother worked as general manager for defendants. Says such services were usually paid for at the sum of sixty dollars to eighty dollars per month the year round. He says the defendant, William Coach, told him that his brother, Henry, had learned the business very rapidly, and "that he had concluded to pay him off at the rate of sixty dollars per month the first year, and seventy-five dollars the following year."

The plaintiff states, further, that he was not only manager of defendant's lumber camp, but that he kept books part of the time, and that his services were worth from sixty dollars to seventy-five dollars per month.

This is the sum and substance of the plaintiff's testimony.

On the part of the defendant, one witness says twenty-six dollars to thirty-five dollars per month "clear of board," is about the value of plaintiff's services. That he is thoroughly acquainted with such matters.

Another witness states it to be a fact, that defendant, William Coach, was the manager and superintendent, and that the plaintiff occupied only a subaltern position.

Another witness states that he was engaged at work in the defendant's lumber camp while plaintiff was there. That the plaintiff was in charge of the supplies, and kept the books and the time for the laborers in the camp.

That "a man's services of Hake's capacity in the business he was in, are worth twenty-six dollars a month and board during the period of his employment."

That he has done "the same work in the same capacity as Henry Hake" before he went to work on his own account. That he has been in the lumber business for thirty years as proprietor, and is quite familiar with all the branches of the business. That he has frequently been in the camp where the plaintiff was employed and has enjoyed opportunities of seeing what kind of work he was engaged in doing, and of judging of his ability and capacity. That he has, himself, worked in the same capacity as that in which Henry Hake worked for one dollar per day and board.

Another witness says that he was at work for the defendants from 1889 till 1892, and was acquainted with the plaintiff and the kind of work he was doing.

The plaintiff was occupied irregularly—he frequently being absent for several months at a time. That he had understood from the plaintiff that he was representing his father's interest in the business. That he (witness) was familiar with the lumber business of defendants from the 21st of May, 1886, to the 9th of December, 1892; and was also familiar with the character of business Henry Hake was doing during that period of time.

He places the value of plaintiff's services at twenty-six dollars to thirty dollars per month and board. That is the amount the Nestors paid him for the same kind of work, and that plaintiff's services were not worth any more. That plaintiff told him many times that he was engaged in looking after his father's interest in

defendants' business. That he (witness) has been engaged in the lumbering business for more than twelve years.

That from the fall of 1889 to 1892 (he) worked right "with Henry Hake during the time he was in camp and knew the kind of work he was doing and the value of his services, and thinks he is a competent judge. That he fixes the value of his services at twenty-six dollars to thirty dollars per month, because he thinks they were not worth more than that."

Says "he was not an experienced scaler by any means; and that men could be hired to do the same work he did at the wages named."

Another witness states that he knew plaintiff from the 17th of September, 1890, to the time of delivering his testimony. That he (witness) was working under Mr. Coach at the time. This witness makes an exactly similar statement to that of the witness last mentioned and places twenty dollars per month as his estimate upon plaintiff's services, with board.

Another witness makes equally as circumstantial a statement and puts his estimate at twenty-six dollars to thirty dollars per month, with board.

William Coach, one of the defendants, states, as a witness, that the plaintiff was inexperienced when he first came to the camp, and knew nothing about the lumbering business whatever. That he told the plaintiff that he could not pay him any wages, but his father would pay him whatever he thought he would be able to earn. That to this proposition the plaintiff assented. That he never employed him nor agreed to pay him.

He further states that he himself was the general manager of the business of the partnership, and gave to it his services, time and attention.

That Mr. William Hake, his partner, gave neither time nor attention to the business, he being at the time engaged in the wholesale liquor business.

He states very positively that "there was an understanding between himself, William Hake and Henry P. Hake that Henry's services were to go as part set-off for his (William Coach's) services, and that his (Henry's) father was to pay him whatever such services were worth."

That for the entire period plaintiff's services were not worth more

than twenty-six dollars per month and board; and that he boarded and lodged him.

That "from time to time Henry would need some money, and (he) asked his father if it would be all right for (him) to give Henry money when he wanted or needed it; and he said it would."

He further states that "the plaintiff was frequently absent from the camp for three or four months at a time."

Another witness confirms the statement of Coach, and states that he was at work for defendants during the whole period of time the plaintiff was there.   That he (witness) was the foreman of the camp, and the plaintiff was under him; and he places twenty to twenty-six dollars as the value of his services.   States that he "paid a man of plaintiff's experience that price, and gave the job to Henry because he was a son of old man Hake."

Of plaintiff's four witnesses who testify with respect to the value of his services per month, one says sixty to seventy-five dollars; another says from sixty to eighty dollars; another says seventy-five to one hundred dollars, and the last says from one hundred to one hundred and twenty-five dollars.

It becomes quite evident, when all the evidence is considered, that those estimates are hypothetical, problematical and much exaggerated.

They are the statements of persons who are confessedly unfamiliar with the facts, and, personally, knew nothing of the character of plaintiff's employment or services.

On the contrary, each and every one of the defendant's witnesses testified from actual knowledge and gave his personal experience and based his estimate upon actual facts.

With regard to the value of plaintiff's services, one witness places the estimate of twenty dollars to twenty-six dollars per month, with board; another says twenty dollars to thirty dollars; two others say twenty-six dollars and two others at twenty-six dollars to thirty dollars.

Taking the mean between the two extremes of the estimates of plaintiff's witnesses at seventy-five dollars and that of the defendants at twenty-six dollars, there is a difference of forty-nine dollars.

But it is quite evident that the testimony of the defendant's witnesses must be accepted as our guide, as it is more accurate and conservative; and, placing plaintiff's services at twenty-six dollars per

month, net, the total amount would approximate one thousand eight hundred and seventy-two dollars, as against the amount of two thousand four hundred and sixty-eight dollars and eighty-three cents, which he judicially admits having received.

But it is a fact, which is substantially established by the evidence, that the plaintiff was employed for the express purpose of representing his father's interest in the partnership, as he could not give it his personal attention. On this evidence—and, notwithstanding the plaintiff had the closing of the case, neither he nor any of his witnesses took the stand to deny the positive statement of William Coach and his witnesses—we can safely affirm that for plaintiff's services there can be no charge against the defendant, William Coach.

As this suit does not involve any adjustment or settlement of partnership accounts *inter se*, it will serve every necessary purpose to decide, upon the issues raised herein, that plaintiff has no just and well grounded demand against William Coach as appellant, leaving the judgment in all other respects *in statu quo*.

It is therefore ordered and decreed that the judgment appealed from by William Coach be, and the same is, in respect to him, reversed and annulled; and it is further ordered that there be judgment in his favor rejecting plaintiff's demand as to him, with all costs of both courts.